FILED

2021 Mar-25  AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BNSF RAILWAY COMPANY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.: 2:11-cv-01047-MHH** |
| | } | |
| **ALABAMA DEPARTMENT OF REVENUE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

| | | |
|---|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.: 2:13-cv-01305-MHH** |
| | } | |
| **ALABAMA DEPARTMENT OF REVENUE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

| | | |
|---|---|---|
| **ALABAMA SOUTHERN RAILROAD, LLC, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| v. | } | **Case No.: 2:14-cv-00283-MHH** |
| | } | |
| **ALABAMA DEPARTMENT OF REVENUE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

[W]e hold that Alabama's sales and use tax violates the 4-R Act.

. . .

As long as the State retains the sales and use tax exemption for diesel fuel used by water carriers "engaged in foreign or international commerce or in interstate commerce," Ala. Code §§ 40-23-4(a)(10), 40-23-62(3), the 4-R Act forbids it from imposing the sales and use tax on diesel fuel used by rail carriers "engaged in foreign or international commerce or in interstate commerce." Our opinion should be read with that imperative in mind.

*CSX Transp., Inc. v. Alabama Dep't of Revenue*, 888 F.3d 1163, 1187 (11th Cir. 2018).

With that imperative in mind, six railroad companies that operate in Alabama and that waited their turn during CSX's decade-long lawsuit against the Alabama Department of Revenue now ask the Court to compel the State of Alabama, and counties and cities within Alabama, to extend to the railroad companies the relief that CSX obtained when the Eleventh Circuit held that "Alabama's sales and use tax violates the 4-R Act."[1]   Like CSX, the plaintiffs here contend that the State of

---

[1] The Court consolidated the railroad companies' cases for the limited purpose of resolving the plaintiffs' motions for judgment on the pleadings in each case. (Doc. 72). Unless otherwise noted, all record citations refer to CM/ECF docket entry numbers in *BNSF Railway Company v. Alabama Department of Revenue, et al.*, 2:11-cv-01047-MHH, the lead case for purposes of this limited consolidation.

The plaintiffs are BNSF Railway Company (2:11-cv-01047); Norfolk Southern Railway Company (2:13-cv-01305); and Alabama Southern Railroad, LLC, Alabama Warrior Railway, LLC, Autauga Northern Railroad, LLC, and Birmingham Terminal Railway, LLC (2:14-cv-00283).

Alabama imposes a discriminatory sales and use tax on railroad diesel fuel that violates the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11501, the 4-R Act, because the State of Alabama exempts from the same tax diesel fuel purchased and used by water carriers.  Because the State of Alabama, as of the date of this opinion, still "retains the sales and use tax exemption for diesel fuel used by water carriers 'engaged in foreign or international commerce or in interstate commerce,' Ala. Code §§ 40-23-4(a)(10), 40-23-62(3)," and still imposes "the sales and use tax on diesel fuel used by rail carriers" in interstate commerce, despite the Eleventh Circuit Court of Appeals' three-year-old imperative, the plaintiffs ask the Court to permanently enjoin the imposition of the tax on them.[2]  The vehicle they have selected to request relief before their cases proceed to discovery is a Rule 12(c) motion for judgment on the pleadings.  (2:11-cv-01047, Doc. 87; 2:13-cv-01305, Doc. 123; 2:14-cv-00283, Doc. 120).[3]

---

The defendants are the Alabama Department of Revenue (all cases); Jefferson County and the City of Birmingham (2:11-cv-01047 and 2:14-cv-00283); Walker County (2:11-cv-01047); Colbert County and the City of Irondale (2:13-cv-01305); Autauga County, the Tuscaloosa County Special Tax Board, the City of Tuscaloosa, and the City of Fairfield (2:14-cv-00283); and various government officials, sued in their official capacities only, responsible for tax administration in those jurisdictions (all cases).  Unless otherwise noted, a reference to a defendant state, county, or city includes the defendant government officials in those jurisdictions.

[2] "The 'sales and use tax' is actually two separate taxes on tangible personal property (including diesel fuel): a 4% sales tax on it if purchased in Alabama, and a 4% use tax on it if purchased outside Alabama but used inside the state. Ala. Code §§ 40-23-2(1) (sales tax), 40-23-61(a) (use tax). The rate is the same regardless of which of the two taxes is applied and it is stylistically simpler to refer to the taxes as though they were one."  *CSX*, 888 F.3d at 1168 n.1.

[3] The three motions for judgment on the pleadings are identical.

Resolving the motions for judgment on the pleadings requires the Court to answer a central question concerning the *CSX* case: is the Eleventh Circuit's holding that Alabama's sales and use tax on rail carrier diesel fuel violates the 4-R Act broad enough to render the tax in violation of the 4-R Act as to all rail carriers in Alabama or did the Court of Appeals mean for its holding to apply only to the specific rail carrier plaintiff in the *CSX* case because of the particularized facts, procedural posture, and context of that case? The language quoted above permits only one answer. Relying on a joint stipulation that "[t]he principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Alabama are on-highway motor carriers of property in interstate commerce ("motor carriers") and carriers of property in interstate commerce by ships, barges and other vessels ("water carriers")," the Eleventh Circuit Court of Appeals unequivocally held that Alabama's sales and use tax on railroad diesel fuel violates the 4-R Act as a matter of law with respect to all rail carriers in Alabama for as long as the State exempts water carriers in Alabama from the same tax. As discussed below, the defendants' search for wiggle room is unavailing.

## I.      Judgment on the Pleadings Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  A Rule 12(c) motion for judgment on the pleadings, as opposed to a Rule 12(b)(6) motion to dismiss, "provides a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings . . . ." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quotation omitted) (emphasis in *Perez*).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez*, 774 F.3d at 1335.

When a plaintiff files a motion for judgment on the pleadings, a district court accepts as true all material facts alleged in the defendant's pleading and views those facts in the light most favorable to the defendant.  *See Perez*, 774 F.3d at 1335.  "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez*, 774 F.3d at 1335.

## II.    Background

### A.    Facts

Railroads operating in Alabama are subject to state, county, and municipal sales and use taxes on diesel fuel.  *See* ALA. CODE §§ 40-23-2(1), 40-23-61(a) (state sales and use taxes on tangible personal property); *Alabama Dep't of Revenue v. CSX Transp., Inc.*, 575 U.S. 21, 24 (2015) (noting that Alabama applies the sales and use tax on tangible personal property to railroads' purchase and use of diesel fuel); ALA. CODE §§ 11-3-11.2, 11-51-200–204 (granting parallel sales and use taxing powers to counties and municipalities); (Doc. 76, pp. 5–6, ¶¶ 17–23; Doc. 83, pp. 5–6, ¶¶ 17, 19, 23; Doc. 84, pp. 6–7, ¶¶ 17, 20, 23; Doc. 85, p. 4, ¶¶ 17, 23; Doc. 86, pp. 3–4, ¶¶ 17, 21) (all parties agreeing that the State, counties, and municipalities impose and collect those taxes).[4]  Alabama law exempts motor carriers and water carriers from those taxes.  *See* ALA. CODE §§ 40-17-325(b), 40-23-4(a)(10), 40-23-62(3); (Doc. 76, p. 6, ¶¶ 25–26; Doc. 85, pp. 6–7, ¶¶ 25–26).[5]

The tax burden on railroads is significant.  Undisputed factual allegations in the *BNSF Railway* case provide an example.  The State tax rate is 4%; the Jefferson

---

[4] The pleadings in these three cases are substantially similar, so, unless otherwise noted, a citation to the amended complaint in the *BNSF Railway* case, 2:11-cv-01047, (Doc. 76), suffices as a citation to the amended complaints in the other two cases, and a citation to one of the answers filed in the *BNSF Railway* case, (Docs. 83, 84, 85, 86), suffices as a citation to all other answers.

[5] Water carriers are subject to a sales and use tax on diesel fuel used in intrastate—but not interstate—commerce.  (Doc. 76, p. 7, ¶ 26; Doc. 85, p. 7, ¶ 26).  The plaintiffs allege that 0.5% of water carriage tonnage is intrastate.  (Doc. 76, p. 7, ¶ 26).

County aggregate tax rate is 2%; the Walker County tax rate is 2%; and the City of Birmingham tax rate is 4%. (*See* Doc. 76, p. 5, ¶¶ 17, 19–21; Doc. 83, p. 5, ¶ 19; Doc. 84, p. 6, ¶ 20; Doc. 85, p. 4, ¶ 17; Doc. 86, p. 4, ¶ 21). Thus, BNSF is subject to an aggregate tax rate of 10% in Birmingham, 6% in Walker County, and 6% in Jefferson County. (Doc. 76, p. 5, ¶ 22).

      B.    <u>The 4-R Act</u>

The 4-R Act forbids discriminatory state taxation of rail carriers. The Act provides: "[A] State, subdivision of a State, or authority acting for a State or subdivision of a State may not . . . [i]mpose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part." 49 U.S.C. § 11501(b)(4). This subsection, § 11501(b)(4), which follows subsections addressing property taxes, is a catchall that captures sales and use taxes. 49 U.S.C. § 11501(b)(1)-(3); *CSX Transp.*, 888 F.3d at 1169. A tax that applies to a railroad but exempts its interstate competitor is facially discriminatory under the 4-R Act. *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S. 277, 288 (2011).

III.   **The *CSX* Case - *CSX Transportation v. Alabama Department of Revenue, et al.,* Case No.: 2:08-cv-00655-AKK, (N.D. Ala.)**

The *CSX* case is the precursor to the present cases.  The history of the case is set forth in the Eleventh Circuit's final opinion in the *CSX* matter.  *CSX Transp.*, 888 F.3d at 1169–72.  In the *CSX* case, the plaintiff, CSX, raised the same claim as the plaintiffs in these cases:  that Alabama's sales and use tax on railroad diesel fuel discriminates against rail carriers in violation of the 4-R Act because water carriers are exempt from the tax.  (*CSX* Case, Complaint, Doc. 1, filed April 14, 2008).[6]

After ten years of litigation, two district court trials, five stops at the Eleventh Circuit Court of Appeals, and two trips to the United States Supreme Court, the *CSX* case closed in December 2019 with a final order from Judge Kallon granting relief consistent with a published Eleventh Circuit opinion for which the Supreme Court denied certiorari.  (*CSX* Case, Order, Doc. 182, entered December 9, 2019).

As the Court describes below, several aspects of the *CSX* case are important to the pending motions for judgment on the pleadings.  The best place to start may be the Eleventh Circuit's last word in the case -- its opinion styled *CSX Transportation, Inc. v. Alabama Dep't of Revenue*, 888 F.3d 1163 (11th Cir.), *opinion modified on denial of reh'g*, 891 F.3d 927 (11th Cir. 2018).  The parties in

---

[6] In the years after CSX filed its action, the plaintiffs in these consolidated actions filed their lawsuits.  The judges presiding over the actions routinely stayed these companion cases pending resolution of the *CSX* case.  (*See, e.g.*, Doc. 46).

these consolidated cases interpret the Eleventh Circuit's final opinion in the *CSX* litigation differently.  The plaintiffs contend that the Eleventh Circuit's opinion applies to all rail carriers in Alabama, such that any railroad engaged in interstate commerce suffers discriminatory taxation in violation of the 4-R Act when Alabama taxes the railroad's purchase and use of diesel fuel but does not tax diesel fuel used by water carriers.  (*See, e.g.*, Doc. 87, pp. 8–9).  The defendants, on the other hand, contend that the Eleventh Circuit's opinion applies only to CSX because evidence and stipulations in the *CSX* case, and several other circumstances that the Court describes below, proved only that CSX—not necessarily every rail carrier in Alabama—competes directly with water carriers.  (*See, e.g.*, Doc. 89, pp. 17–23; Doc. 90, pp. 16–19, 29–34; Doc. 91, pp. 14–16).  The defendants argue that the Eleventh Circuit's opinion establishes that Alabama violates the 4-R Act if it imposes the sales and use tax on a specific rail carrier engaged in interstate commerce but not on water carriers with which that specific rail carrier competes, as shown by evidence specific to that rail carrier, so that for each plaintiff railroad, the Court must determine whether the rail carrier is engaged in interstate commerce and whether the rail carrier competes with water carriers.

Though the language of the Eleventh Circuit's final opinion is emphatic and unambiguous in its holding that, under the 4-R Act, the State of Alabama cannot impose a sales and use tax on diesel used by rail carriers in the state and, at the same

time, exempt water carriers using diesel fuel from the same tax, we trace some of the history leading to that holding to provide context for the Eleventh Circuit's conclusion.

A.    The First District Court Order of Dismissal and Subsequent Appeals

As mentioned above, the *CSX* case began in 2008 with a complaint raising the same allegation that the plaintiffs in these cases make.  (*CSX* Case, Doc. 1, p. 3). The scope of the relief sought by CSX is important to the defendants' arguments in the present cases:  CSX sought a declaratory judgment and injunction only with respect to CSX. (*See CSX* Case, Doc. 1, p. 8) ("CSXT requests that this Court . . . enjoin the defendants . . . from assessing, levying, or collecting sales and use taxes from CSXT or from any person paying on behalf of CSXT on its purchase or consumption of diesel fuel and gasoline for rail transportation purposes."); (*CSX* Case, Doc. 1, pp. 8–9) ("CSXT requests that this Court . . . [d]eclare that defendants' imposition of Alabama sales and use tax on CSXT's purchases or consumption of diesel fuel and gasoline for rail transportation purposes violated [the 4-R Act].").

As they are here, the Alabama Department of Revenue and its Commissioner were defendants in the *CSX* case.  The admissions and stipulations that those defendants made throughout the course of litigation are important.  In their answer in the *CSX* case, the defendants admitted that motor carriers and water carriers were railroads' "principal competitors" in Alabama in the transportation of property in

interstate commerce.  (*CSX* Case, Doc. 1, p. 6, ¶ 16, Doc. 4, p. 2, ¶ 16).  The

defendants stipulated to this fact again in a pre-preliminary injunction hearing filing,

agreeing that:

> The principal competitors to rail carriers in the transportation of
> property in interstate commerce in the State of Alabama are on-
> highway motor carriers of property in interstate commerce ("motor
> carriers") and carriers of property in interstate commerce by ships,
> barges and other vessels ("water carriers").

(*CSX* Case, Doc. 12, p. 3, ¶ 10).  Significantly, the defendants opted not to limit the

stipulation to CSX.[7]  The Court recited the parties' broad stipulation in its

memorandum opinion granting CSX's motion for a preliminary injunction.  (*CSX*

Case, Doc. 13, pp. 2–3).

The Court *sua sponte* dismissed CSX's complaint on December 16, 2008

because the Court found that the Eleventh Circuit's decision in a related case,

*Norfolk Southern Railway Co. v. Alabama Dep't of Revenue*, 550 F.3d 1306 (11th

Cir. 2008), *abrogated by CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S.

277 (2011), where the Eleventh Circuit ruled in favor of the Alabama Department

of Revenue on an identical claim, was dispositive.  (*CSX* Case, Doc. 22).  The

---

[7] In other words, the parties' stipulation could have provided:

> The principal competitors to CSX in the transportation of property in interstate
> commerce in the State of Alabama are on-highway motor carriers of property in
> interstate commerce ("motor carriers") and carriers of property in interstate
> commerce by ships, barges and other vessels ("water carriers").

But it didn't.  The reason for the broad language of the stipulation is important and will become
apparent as this opinion proceeds.

Eleventh Circuit affirmed this Court's *sua sponte* dismissal.  *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 350 Fed. Appx. 318, 319 (11th Cir. 2009), *rev'd*, 562 U.S. 277, *and vacated*, 639 F.3d 1040 (11th Cir. 2011).

The Supreme Court reversed.  *CSX Transp., Inc.*, 562 U.S. at 297.   The issue before the Supreme Court was narrow and involved a threshold question under the 4-R Act:  "whether a railroad may invoke [the 4-R Act] to challenge sales and use taxes that apply to rail carriers (among others), but exempt their competitors in the transportation industry."  562 U.S. at 280.   In framing the issue, the Supreme Court stated:

> Railroads pay [state sales and use] taxes when they purchase or consume diesel fuel. But railroads' main competitors—interstate motor and water carriers—are generally exempt from paying sales and use taxes on their fuel (although fuel for motor carriers is subject to a separate excise tax).

562 U.S. at 282 (footnote omitted).  After analyzing the language of the 4-R Act, the Supreme Court answered this question in the affirmative, holding that "CSX may challenge Alabama's sales and use taxes as 'tax[es] that discriminat[e] against . . . rail carrier[s]' under [the 4-R Act]."  562 U.S. at 296.  The Supreme Court did not address whether CSX would win such a challenge and remanded for further proceedings.  562 U.S. at 297.

B.      The First District Court Trial and Subsequent Appeals

Following remand, in 2012, the parties proceeded to trial on CSX's claim that the sales and use tax on diesel fuel discriminated against rail carriers in violation of the 4-R Act.  Before trial, on April 13, 2012 – with the *Norfolk Southern* (2:08-cv-00285) and *BNSF* (2:11-cv-01047) cases waiting in the wings – the State again stipulated that motor carriers and water carries were rail carriers' principal competitors, using the exact language that the parties used in their original stipulation in 2008.  (*CSX* Case, Doc. 12, p. 3, ¶ 10; Doc. 63, p. 3, ¶ 10).

The State succeeded at trial.  In its post-trial memorandum opinion dismissing the case, this Court stated several times that rail carriers competed directly with water carriers, and, therefore, water carriers were the proper comparison class for which CSX had to prove favorable treatment by the State.  *See CSX Transp., Inc. v. Alabama Dep't of Revenue*, 892 F. Supp. 2d 1300, 1308 (N.D. Ala. 2012).  The Court held:   "As the Department sufficiently demonstrates that rail carriers are not unjustifiably disfavored as it relates to the purchase and use of diesel fuel, the court finds no discrimination under the 4–R Act."  892 F. Supp. 2d at 1317.  Had the Court's judgment survived CSX's appeal, the judgment would have expedited the resolution of the *Norfolk Southern* and *BNSF* cases and likely would have preempted companion lawsuits by other rail carriers operating in Alabama because the broad language of the parties' stipulation, which identified water carriers as the relevant

comparators of all rail carriers, not just CSX, and the Court's finding of "no discrimination under the 4–R Act" would have been dispositive.

But the Court's judgment did not survive CSX's appeal; the Eleventh Circuit reversed. *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 720 F.3d 863, 871 (11th Cir. 2013). The Eleventh Circuit agreed that a "competitive approach" model, according to which courts compare the taxation of an entity and its competitors, should guide a 4-R discriminatory taxation analysis. *CSX Transp., Inc.*, 720 F.3d at 869. The Eleventh Circuit noted throughout its opinion that rail carriers competed directly with water carriers. *See CSX Transp., Inc.*, 720 F.3d at 865, 867, 869, 871. The Eleventh Circuit did not analyze *de novo* the evidence of competition presented at the district court trial, but instead accepted this Court's finding and the parties' stipulation that rail carriers competed directly with water carriers. Finally, the Eleventh Circuit disagreed with this Court and found that CSX had offered proof of discriminatory taxation, which shifted the burden to the State to prove a sufficient justification for the water carrier exemption. *CSX Transp., Inc.*, 720 F.3d at 871. In finding that CSX had established a prima facie case of discrimination, the Eleventh Circuit stated: "Quite simply, the sales tax overburdens the rail carriers because its competitors do not pay it." *CSX Transp., Inc.*, 720 F.3d at 869. The Eleventh Circuit found that the State did not prove a sufficient justification for the water carrier

exemption and remanded to the district court with instructions to enter declaratory and injunctive relief in favor of CSX.  *CSX Transp., Inc.*, 720 F.3d at 871.

The State appealed the Eleventh Circuit's decision to the Supreme Court, and the Supreme Court granted certiorari for the second time in the *CSX* case.  The defendants in the present cases ask the Court to focus on how Justice Scalia framed the Supreme Court's second opinion: "We are asked to decide whether a State violates [the 4-R Act's prohibition against discriminatory taxation] by taxing diesel fuel purchases made by *a* rail carrier while exempting similar purchases made by *its* competitors; and if so, whether the violation is eliminated when other tax provisions offset the challenged treatment of railroads."  *Alabama Dep't of Revenue v. CSX Transp., Inc.*, 575 U.S. 21, 24 (2015) (*CSX II*) (emphasis added per the defendants' focus on Justice Scalia's use of singular nouns) (*see* Doc. 90, p. 7).  The Supreme Court agreed with the Eleventh Circuit's competitive model approach and found that "[w]hen *a railroad* alleges that a tax disadvantages *it* compared to *its* competitors in the transportation industry, the *railroad's* competitors *in that jurisdiction* are the comparison class."  *CSX II*, 575 U.S. at 27 (emphasis added per the defendants' focus on the singular nouns used in the opinion).  The Supreme Court also stated:  "A comparison class will thus support a discrimination claim only if it consists of individuals similarly situated to the claimant," maintaining the Court's focus on a singular plaintiff.  *CSX II*, 575 U.S. at 27.  But the Supreme Court also reiterated its

holding in its first opinion, stating: "a tax discriminates under subsection (b)(4) when it treats 'groups [that] are similarly situated' differently without sufficient 'justification for the difference in treatment.'" *CSX II*, 575 U.S. at 26 (quoting *CSX I*, 562 U.S. at 287) (brackets in *CSX II*).

In deciding the proper comparison class for CSX's discriminatory taxation claim, the Supreme Court, like the Eleventh Circuit, did not analyze evidence of competition presented to the district court. Instead, the Supreme Court found that "[t]he Eleventh Circuit properly concluded that, *in light of CSX Transportation's complaint and the parties' stipulation*, a comparison class of competitors consisting of motor carriers and water carriers was appropriate, and differential treatment vis-à-vis that class would constitute discrimination." *CSX II*, 575 U.S. at 30 (emphasis added).

The Supreme Court remanded for the Eleventh Circuit to determine whether several of the State's alternative rationales for the water carrier and motor carrier tax exemptions—which the Eleventh Circuit had not addressed—sufficiently justified the exemptions. *CSX II*, 575 U.S. at 32.

C.   The Second District Court Trial, Subsequent Appeal, and the Eleventh Circuit's Final Opinion

The Eleventh Circuit passed the question of sufficient justification to the district court. *See CSX Transp., Inc. v. Alabama Dep't of Revenue*, 797 F.3d 1293, 1294 (11th Cir. 2015). This Court held a trial on that issue in 2016. Before trial, the

State stipulated for the fourth time in the *CSX* case that motor carriers and water carriers were rail carriers' principal competitors, using the exact language of the parties' original stipulation in 2008. (*CSX* Case, Doc. 12, p. 3, ¶ 10; Doc. 137, p. 3, ¶ 10). The Court's pretrial order identified that stipulation as an undisputed fact. (*CSX* Case, Doc. 113, p. 8, ¶ 10). By 2016, the complaints in the consolidated cases were pending, with the three actions stayed, awaiting the outcome of the *CSX* case.[8]

Following trial, the Court found that the sales and use tax did not violate the 4-R Act because the State sufficiently justified the water carrier exemption. *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 247 F. Supp. 3d 1240, 1255 (N.D. Ala. 2017). The Court accepted the State's explanations that the State did not force rail carriers to use dyed diesel fuel, rail carriers could just as effectively use undyed diesel fuel that would not be subject to the sales and use tax, failing to exempt water carriers might violate the Commerce Clause, and CSX suffered no competitive injury from the water carrier exemption.

The Eleventh Circuit reversed this Court's decision and remanded with instructions to grant CSX's complaint for declaratory judgment and injunctive relief. *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 888 F.3d 1163, 1187 (11th Cir.

---

[8] As noted above, in 2014, plaintiffs Alabama Southern Railroad, LLC; Alabama Warrior Railway, LLC; Autauga Northern Railroad, LLC; and Birmingham Terminal Railway, LLC filed the last of the three consolidated cases (2:14-cv-00283).

2018), *opinion modified on denial of reh'g*, 891 F.3d 927 (11th Cir. 2018).  The

plaintiffs here note how the Eleventh Circuit framed the question on appeal:

> The question before us is whether Alabama's tax scheme, which
> imposes either a sales or use tax on *rail carriers* when *they* buy or
> consume diesel fuel but exempts competing *motor and water carriers*
> from those taxes, violates the [4-R] Act.  Our answer is "no" as to motor
> carriers, "yes" as to water carriers.

*CSX*, 888 F.3d at 1168 (emphasis added per the plaintiffs' focus on the Eleventh

Circuit's use of plural nouns) (*see* Doc. 87, p. 21).

   The Eleventh Circuit accepted the State's justifications for the motor carrier

exemption but rejected each of the State's proffered justifications for the water

carrier tax exemption.   *CSX*, 888 F.3d at 1173–87.   According to the Eleventh

Circuit, CSX had no burden to prove actual injury, federal law did not compel the

water carrier exemption, the water carrier exemption was not necessary to avoid

double taxation, and disparate financial burdens on the State did not justify the water

carrier exemption.  The Eleventh Circuit stated:  "Having concluded that the water

carrier exemption is not 'compelled by federal law' and that neither of the State's

'alternative rationales' justifies the water carrier exemption, . . . we hold that

Alabama's sales and use tax violates the 4-R Act."  888 F.3d at 1187.

As was the case in several earlier opinions, the parties' stipulations about competition played an important role in the Eleventh Circuit's opinion. The Eleventh Circuit addressed the stipulations when rejecting the district court's finding that CSX had to, and did not, prove competitive injury, stating:

> [T]he parties stipulated that water carriers are among "[t]he principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Alabama." Although a district court may set aside an erroneous stipulation where justice requires, *see, e.g., Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987), the district court did not suggest that it thought justice required doing so. Instead, its rationale was that the "stipulation does not equate to a concession that the competition between CSX and water carriers is substantial." *CSX Transp.*, 247 F. Supp. 3d at 1245. We are hard pressed to square a finding that competition between CSX and water carriers is insubstantial with a stipulation that they are "principal competitors," especially where the stipulation distinguishes "[a]ir carriers," which "also are engaged in the transportation of property in interstate commerce in the State of Alabama, but only marginally compete with rail carriers."
>
> And we are supremely reluctant to allow a district court to relitigate a stipulated fact that the Supreme Court relied on for one of its holdings, which is that rail carriers and water carriers are a similarly situated comparison class. *CSX II*, 135 S. Ct. at 1143 ("[I]n light of [CSX's] complaint <u>and the parties' stipulation</u>, a comparison class of competitors consisting of motor carriers and water carriers was appropriate . . . .") (emphasis added).

*CSX*, 888 F.3d at 1180 (underlining in *CSX*).

After issuing its opinion, the Eleventh Circuit issued a substitute opinion on the State's petition for rehearing "to clarify that the water carrier exemption from the sales and use tax applies only when those carriers purchase or use diesel fuel to

ship freight interstate, as opposed to shipping it intrastate."  *See CSX Transp., Inc.*

*v. Alabama Dep't of Revenue*, 891 F.3d 927, 928 (11th Cir. 2018).  CSX then filed

a petition for rehearing of that substitute opinion out of concern that the substitute

opinion inadvertently narrowed the scope of the phrase "engaged in interstate

commerce" by "referring to exempted activity as, among other things, 'haul[ing]

freight interstate' or 'transport[ing] freight interstate.'"  891 F.3d at 928.  The

Eleventh Circuit doubted CSX's concern, but nevertheless granted CSX some relief

because the State informed the Eleventh Circuit that the Department of Revenue had

a history of inconsistently applying the statutory language "engaged in interstate

commerce."  891 F.3d at 928.  "To avoid further inconsistencies," the Eleventh

Circuit modified its substitute opinion to add the following language in the

"Conclusion" section of the opinion:

> As long as the State retains the sales and use tax exemption for diesel
> fuel used by water carriers "engaged in foreign or international
> commerce or in interstate commerce," Ala. Code §§ 40-23-4(a)(10),
> 40-23-62(3), the 4-R Act forbids it from imposing the sales and use tax
> on diesel fuel used by rail carriers "engaged in foreign or international
> commerce or in interstate commerce."  Our opinion should be read with
> that imperative in mind.

891 F.3d at 928; *see CSX Transp.*, 888 F.3d at 1187 (added language appearing in

the final published opinion).

The Supreme Court denied the State's petition for writ of certiorari.  *Alabama Dep't of Revenue v. CSX Transp., Inc.*, 139 S. Ct. 2741 (2019).  Consequently, the Eleventh Circuit's published opinion became final and, on December 19, 2019, this Court followed the Eleventh Circuit's instructions and granted declaratory and injunctive relief in CSX's favor.  (*CSX* Case, Doc. 182).

The defendants here note that the Court fashioned relief only with respect to CSX:

> [T]his Court hereby **DECLARES** that, as long as the State of Alabama retains the sales and use tax exemption for diesel fuel used by water carriers "engaged in foreign or international commerce or in interstate commerce," Ala. Code §§ 40-23-4(a)(10), 40-23-62(3), the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501(b)(4), forbids it from imposing on CSXT the sales and use tax under Ala. Code §§ 40-23-2(1) and 40-23-61(a) (or any subsequent re-codifications thereof) on diesel fuel purchased or used by CSXT while "engaged in foreign or international commerce or in interstate commerce."

> Furthermore, Defendants . . . are hereby **ENJOINED** from assessing, levying, or collecting from CSXT sales and use taxes under Ala. Code §§ 40-23-2(1) and 40-23-61(a) (or any subsequent re-codifications thereof) on diesel fuel purchased or used by CSXT while engaged in foreign or international commerce or in interstate commerce.

(*CSX* Case, Doc. 182, pp. 1–2) (bold type in district court order).  That order closed the *CSX* case.  (*CSX* Case, Doc. 182, p. 2).

## IV.   Analysis

And so we arrive at the plaintiffs' pending motions for judgment on the pleadings.  The Court will begin its analysis of the motions with several issues that do not depend on a comprehensive review of the *CSX* case:  whether Rule 12(c) of the Federal Rules of Civil Procedure precludes judgment on the pleadings against Irondale because Irondale has not filed a responsive pleading; whether the county and municipal defendants in these cases would be bound by a permanent injunction and declaratory judgment entered with respect to a sales and use tax implemented by the State; and whether the plaintiffs are engaged in interstate commerce.  The Court will then turn to the crux of the motions for judgment on the pleadings:  the law according to the *CSX* case and the application of the concept of judicial estoppel.  The Court will conclude its analysis with the issue of whether the plaintiffs' ability to purchase undyed diesel fuel shows a dispute that precludes judgment on the pleadings.

### A.   Judgment on the Pleadings with Respect to Irondale

Irondale has filed a motion to strike the plaintiffs' motion for judgment on the pleadings.  (2:11-cv-01047, Doc. 88).  In the motion, Irondale contends that it has not filed an answer to Norfolk Southern's amended complaint, so judgment on the pleadings entered against it would be premature.

Irondale has not filed an answer to Norfolk Southern's amended complaint, but Irondale filed a still-pending partial motion to dismiss before the Court consolidated these cases to resolve the motions for judgment on the pleadings. (2:13-cv-01305, Doc. 88).  The Court will deny the motion to dismiss in an order entered contemporaneously with this memorandum opinion.

Even so, a motion to dismiss is not a pleading.  *See* FED. R. CIV. P. 7(a) (not listing a motion to dismiss under "Only these pleadings are allowed"); *Chilivis v. S. E. C.*, 673 F.2d 1205, 1209 (11th Cir. 1982) ("Neither a motion to dismiss nor a motion for summary judgment constitutes responsive pleadings for purposes of the federal rules.").  A case is ripe for judgment on the pleadings only when the pleadings are "closed."  FED. R. CIV. P. 12(c).  And the pleadings are not closed until the defendant files an answer.  *Perez*, 774 F.3d at 1336.  Therefore, the pleadings are not closed with respect to Irondale.

Some district courts have ruled on prematurely filed motions for judgment on the pleadings where, for example, the non-moving party does not allege that a motion for judgment on the pleadings is premature, the defendants unreasonably delayed filing an answer, an answer would be identical to that of a co-defendant's, or requiring an answer would be practically unnecessary as it would not change the court's decision on the motion for judgment on the pleadings when it was refiled. *See Wilmington Sav. Fund Soc'y, FSB v. Good Samaritan Fund, Inc.*, No. 2:15-cv-

00211-WCO-JCF, 2017 WL 10675432, at *4 (N.D. Ga. Jan. 20, 2017) (collecting cases); *Paskenta Band of Nomlaki Indians v. Crosby*, No. 2:15-cv-00538-MCE-CMK, 2016 WL 6094468, at *3 (E.D. Cal. Oct. 19, 2016) (collecting cases). Following this line of reasoning, the premature motion for judgment on the pleadings against Irondale would seem to be resolvable because Irondale, like its municipal co-defendants, has acknowledged that its levying of the sales and use tax must parallel the State's sales and use tax, (*see* 2:13-cv-01305, Doc. 96, pp. 9–10), and it is unlikely that Irondale could identify a factual dispute or raise an affirmative defense that would change the ultimate permanent injunction or declaratory judgment.

Nevertheless, the Eleventh Circuit in *Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.* held that Rule 12(c) unambiguously disallows motions for judgment on the pleadings before a responsive pleading is filed, so a district court may not in any circumstances, not even under its inherent authority to maintain its docket for the expeditious disposition of cases, grant a motion for judgment on the pleadings before the pleadings have closed. 631 Fed. Appx. 851, 852–53 (11th Cir. 2015). The Eleventh Circuit's unpublished decision on the matter is not binding authority, but the Court of Appeals' holding could not be clearer: "The question presented in this appeal is whether a district court may grant a Rule 12(c) motion made before the pleadings are closed. The first five words of Rule 12(c) make clear that the answer

is no." *Lillian B. ex rel. Brown*, 631 Fed. Appx. at 852.  The Eleventh Circuit found that, no matter the circumstances, the Federal Rules of Civil Procedure are "'as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a Rule's] mandate than they do to disregard constitutional or statutory provisions.'"  *Lillian B. ex rel. Brown*, 631 Fed. Appx. at 853 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).

Therefore, the Court must deny the motion for judgment on the pleadings as to Irondale and grant Irondale's motion to strike.  By effect of the Court's contemporaneous order denying Irondale's motion to dismiss, Irondale will have 14 days to file a responsive pleading, *see* FED. R. CIV. P. 12(a)(4)(A), after which Norfolk Southern may refile its motion for judgment on the pleadings against Irondale, or, if appropriate, the Court may *sua sponte* enter judgment on the pleadings against Irondale, *see Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (approving the district court's *sua sponte* grant of summary judgment when the dismissed claims were fully briefed, the non-moving party received adequate notice, and the outcome would be the same on a motion).

B.   Hondale

 B.   County and Municipal Taxation

The county and municipal defendants contend that a permanent injunction on the State's levying of the sales and use tax would not necessarily enjoin counties and municipalities from levying the tax.  (Doc. 89, p. 30).  Those defendants assert that

no legal authority establishes that an injunction entered against a state with respect to an individual taxpayer limits the taxing authority delegated to counties or municipalities and that the plaintiffs must offer evidence that they compete with specific water carriers in each local jurisdiction to succeed on their claims against the county and municipal defendants.  (Doc. 89, pp. 35–38).

The county and municipal defendants' arguments miss the mark.  The counties and municipalities derive their taxing authority from the State, and county and municipal sales and use taxes must parallel state sales and use taxes.  ALA. CODE §§ 11-3-11.2, 11-51-200–204; (*see* Doc. 83, p. 5, ¶ 18; Doc. 84, p. 5, ¶ 18; Doc. 85, p. 5, ¶ 18; Doc. 89, pp. 30–31).  Likewise, the State cannot delegate to a county or municipality taxing powers different from or greater than the State's taxing powers. *State v. Butler*, 225 142 So. 531, 533 (Ala. 1932).  The parties agree that this is so. So, the law and the parties' agreement on the matter makes the following clear:  if the State cannot levy the sales and use tax, then neither can counties nor municipalities within the State.  An injunction on the State will identically restrain the local jurisdictions.

C.    Whether the Plaintiffs are Engaged in Interstate Commerce

The defendants assert that a material factual dispute exists as to whether the plaintiffs are engaged in interstate commerce so that the Court should deny the motions for judgment on the pleadings.  (Doc. 90, pp. 39–40).  According to the

defendants, if the Eleventh Circuit's final ruling in the *CSX* case applies to all railroads in Alabama, then, under the plain language of that ruling, the plaintiffs must show they are "engaged in foreign or international commerce or in interstate commerce." (Doc. 90, pp. 39–40). The defendants are correct on this point. Though Alabama's statutory tax scheme does not limit the sales and use tax on diesel fuel to rail carriers engaged in interstate commerce, the Eleventh Circuit, in its final published opinion, found that the existence of the water carrier exemption renders the sales and use tax discriminatory under the 4-R Act only as to rail carriers engaged in interstate commerce. *CSX*, 888 F.3d at 1187. So, to succeed, the plaintiffs must show that no dispute exists as to whether they are engaged in interstate commerce.

The defendants assert that the plaintiffs have not done so. According to the defendants, no plaintiff alleged in its complaint that it engaged in interstate commerce, and no defendant admitted in an answer that a plaintiff engaged in interstate commerce. (Doc. 90, pp. 39–40). The record undermines this argument.

Each plaintiff alleged in its amended complaint that it is engaged in interstate commerce, and the defendants gave different admissions, denials, and non-responses to the allegations. BNSF alleged in its amended complaint that it is "engaged in interstate commerce as a common carrier by railroad." (Doc. 76, p. 3, ¶ 5). The State and Walker County admitted this allegation in their answers. (Doc. 85, p. 2, ¶ 5; Doc. 86, p. 2, ¶ 5). Jefferson County and the City of Birmingham denied it for

being "without sufficient information to admit or deny" the allegation.  (Doc. 83, p. 2, ¶ 5; Doc. 84, p. 2, ¶ 5).

Norfolk Southern alleged in its amended complaint that it is "an interstate carrier by rail."  (2:13-cv-01305, Doc. 50, p. 2, ¶ 4).  The State responded in its answer that that allegation did not require a response.  (2:13-cv-01305, Doc. 60, p. 2, ¶ 4).  Colbert County stated that it "lack[s] knowledge or information sufficient to form a belief as to the truth" of the allegation.  (2:13-cv-01305, Doc. 57, p. 2, ¶ 4).

Alabama Southern Railroad, Alabama Warrior Railway, Autauga Northern Railroad, and Birmingham Terminal Railway each alleged that it was an "interstate carrier by rail."  (2:14-cv-00283, Doc. 21, pp. 2–3, ¶¶ 3–6).  The State, Tuscaloosa County, and the City of Tuscaloosa admitted the allegations.  (2:14-cv-00283, Doc. 25, p. 2, ¶¶ 3–6; Doc. 28, p. 2, ¶¶ 3–6; Docs. 30 & 31, p. 2, ¶¶ 3–6).  Jefferson County admitted the allegations as to Alabama Southern Railroad, Alabama Warrior Railway, and Birmingham Terminal Railway, and stated it was "without sufficient information to admit or deny" the allegation as to Alabama Northern Railroad. (2:14-cv-00283, Doc. 29, p. 2, ¶¶ 3–6).  The City of Fairfield stated it was "without knowledge or information sufficient to form a belief as to the truth" of the allegations.  (2:14-cv-00283, Doc. 27, p. 2, ¶¶ 3–6).  And the City of Birmingham and Autauga County denied the allegations for being "without sufficient information

to admit or deny" them.  (2:14-cv-00283, Doc. 23, p. 3, ¶¶ 3–6; Doc. 36, p. 2, ¶¶ 3–6).

So only Jefferson County, Autauga County, and the City of Birmingham deny that the plaintiffs are engaged in interstate commerce.  Still, those defendants admit that the plaintiffs are railroads operating in Alabama that purchase and consume diesel fuel.  (*See, e.g.*, 2:11-cv-01047, Doc. 83, p. 6, ¶ 23; 2:11-cv-01047, Doc. 84, p. 7, ¶ 23; 2:14-cv-00283, Doc. 36, p. 3, ¶ 16).  These admissions establish that the plaintiffs are "engaged in interstate commerce" as defined by Alabama's water carrier exemption and by extension the Eleventh Circuit's final ruling in the *CSX* case.

The Eleventh Circuit used the language "engaged in foreign or international commerce or in interstate commerce" as that phrase is found in ALA. CODE § 40-23-4(a)(10), the water carrier exemption.  *CSX*, 888 F.3d at 1187.  The Alabama Supreme Court has found that "interstate commerce," as used in ALA. CODE § 40-23-4(a)(10), does not necessarily mean transportation from Alabama to another state.  *Bean Dredging, L.L.C. v. Alabama Dep't of Revenue*, 855 So. 2d 513, 518–19 (Ala. 2003).  Rather, "[t]o determine whether an activity constitutes interstate commerce this Court must consider the course of business and determine its relation to interstate commerce."  *Bean Dredging, L.L.C.*, 855 So. 2d at 519.  And an activity is "engag[ing] . . . in interstate commerce" under ALA. CODE § 40-23-4(a)(10) if it

is "substantially related to interstate commerce." *Bean Dredging, L.L.C.*, 855 So. 2d at 520 (finding that dredging navigable waterways in Alabama was "engaging in interstate commerce" in that dredging was substantially related to interstate commerce because dredging was necessary to keep waterways open for the passage of vessels into and out of the state). Here, the operation of rail carriers on an interconnected rail network and the purchase and consumption of the diesel fuel used by those carriers, which the plaintiffs in these cases do, is substantially related to interstate commerce.

In addition, Congress has found that even wholly intrastate rail carrier operation is substantially related to interstate commerce. The 4-R Act's prohibition against discriminatory taxation applies to all rail carriers subject to the jurisdiction of the Surface Transportation Board. 49 U.S.C. § 11501(b)(4). The Board has jurisdiction over rail carriers that operate wholly intrastate as part of the interstate rail network. 49 U.S.C. § 10501(a)(2)(A). The 4-R Act provides that discrimination against even these intrastate rail carriers "unreasonably burden[s] and discriminate[s] against interstate commerce." 49 U.S.C. § 11501(b). So the 4-R Act also persuades the Court in finding that each plaintiff's rail operations is substantially related to interstate commerce, and therefore each plaintiff is engaging in interstate commerce under ALA. CODE § 40-23-4(a)(10). Accordingly, there is no

dispute in these cases as to whether the plaintiffs engage in interstate commerce that would warrant denying the motions for judgment on the pleadings.

      D.    The Law According to the *CSX* Case and Judicial Estoppel

      The Court now addresses the central issue in these cases:  does the Eleventh Circuit's final opinion in the *CSX* case render Alabama's sales and use tax on diesel fuel discriminatory under the 4-R Act as to all rail carriers engaged in interstate commerce for as long as the tax applies to rail carriers but exempts water carriers? Or, does the Eleventh Circuit's final opinion in the *CSX* case render the tax discriminatory only as applied to CSX or specific rail carriers that, as shown by evidence specific to those rail carriers, compete directly with water carriers?  The answer turns on the extent to which the defendants are estopped from disputing in the consolidated cases whether water carriers compete with rail carriers because the State consistently stipulated in the *CSX* case that water carriers compete with rail carriers in Alabama.  (Doc. 87, pp. 41–45).

      "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  "Stated simply, the doctrine of judicial estoppel rests on the principle that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek

an inconsistent advantage by pursuing an incompatible theory." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180–81 (11th Cir. 2017) (quotation omitted).

In the bankruptcy context, courts apply a two-part test in deciding whether to invoke judicial estoppel: (1) "it must be established that the allegedly inconsistent positions were made under oath in a prior proceeding"; and (2) "the inconsistencies must have been calculated to make a mockery of the judicial system." *Transamerica*, 430 F.3d at 1335.[9]   Courts must analyze "all the facts and circumstances of the particular case" in determining whether a party's inconsistent statements were "calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1185.  A district court "is free to consider any fact or factor it deems relevant to the intent inquiry." *Slater*, 871 F.3d at 1185 n.9 ("We emphasize that this list is not exhaustive; the district court is free to consider any fact or factor it deems relevant to the intent inquiry.").

Outside of the bankruptcy context, courts look at three factors in deciding whether to invoke judicial estoppel:  (1) "whether there is a clear inconsistency between the earlier position and the later position"; (2) "a party's success in convincing a court of the earlier position, so that judicial acceptance of the inconsistent later position would create the perception that either the earlier or later

---

[9] The Court addresses this two-part test because the plaintiffs invoke it in their motion for judgment on the pleadings.  (*See* Doc. 87, pp. 41–42).  The Court need not decide whether the two-part test that courts in the Eleventh Circuit appear to apply only in the bankruptcy context applies in other contexts.

court was misled"; and (3) "whether the inconsistent later position would unfairly prejudice the opposing party." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1182 (11th Cir. 2013) (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010)) (citing in turn *New Hampshire*, 532 U.S. at 750–51). These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel" and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751; *see Slater*, 871 F.3d at 1182 n.7 ("We note that other circuits have taken a similar approach in not rigidly adhering to the *New Hampshire* test (that is, considering different factors).").

Here, the Court concludes, based on its examination of the totality of the circumstances surrounding the parties' broad stipulation in the *CSX* case, that the State is estopped from abandoning its position that waters carriers are rail carriers' principal competitors in Alabama. The State stipulated or admitted at least four times in the *CSX* case that rail carriers compete with water carriers in Alabama. First, CSX alleged in its complaint that "[t]he principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Alabama are on-highway motor carriers of property in interstate commerce ('motor carriers') and carriers of property in interstate commerce by ships, barges and other vessels ('water carriers')." (*CSX* Case, Doc. 1, p. 6, ¶ 16). The State admitted the allegation in its

answer filed on May 1, 2008.  (*CSX* Case, Doc. 4, p. 2, ¶ 16).  Second, on June 20, 2008, the State stipulated with CSX before the preliminary injunction hearing that "[t]he principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Alabama are on-highway motor carriers of property in interstate commerce ('motor carriers') and carriers of property in interstate commerce by ships, barges and other vessels ('water carriers')."  (*CSX* Case, Doc. 12, p. 3, ¶ 10).  Third, on April 13, 2012, the State recited the same joint stipulation in the parties' "Agreed and Proposed Facts and Proposed Conclusions of Law" filed before the first district court trial.  (*CSX* Case, Doc. 63, p. 3, ¶ 10). Finally, on July 11, 2016, the State again repeated the same joint stipulation with CSX in the parties' "Agreed Facts" filed before the second trial.  (*CSX* Case, Doc. 123, p. 3, ¶ 10).  By this time, the plaintiffs in the consolidated cases had claims pending against the defendants, seeking the relief that *CSX* requested in its case.

While the State maintained its broad stipulation in the *CSX* case, the State took the opposite position in the consolidated cases.  In its answer filed on April 5, 2011 in the *BNSF* case, the State responded that it "does not have sufficient information to either admit or deny whether [water carriers] are at this time a principal competitor to rail carriers, due to changed maritime conditions in Alabama because of the BP oil spill."  (Doc. 11, p. 3, ¶ 18).  The Court takes judicial notice that the BP oil spill

took place on April 20, 2010.[10]   The "changed maritime conditions in Alabama" prompted by the 2010 oil spill did not stop the State from stipulating in 2012 and in 2016 in the *CSX* case that water carriers and rail carriers were "principal competitors" in Alabama, thus casting doubt on the State's explanation for changing course in the consolidated cases.  And the State continued denying that water carriers compete with rail carriers in its answers filed in the *Norfolk Southern* case and the *Alabama Southern Railroad* case.  So, the State maintained inconsistent positions in multiple cases simultaneously.

The State's broad stipulation was not a minor point in the *CSX* case.  It was a purposeful, strategic stipulation, and this Court, the Eleventh Circuit Court of Appeals, and the Supreme Court relied on it.  In asking the Court to stay the consolidated cases pending the outcome of the *CSX* case, the State routinely took the position that the ultimate resolution of the *CSX* case would be "dispositive of the issues" in the consolidated cases.  (*See* Doc. 31, p. 3; Doc. 33, p. 3; Doc. 37, p. 3). That ultimate resolution of the *CSX* case, of course, would rely on the State's

---

[10] UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Deepwater Horizon –BP Gulf of Mexico Oil Spill*, https://www.epa.gov/enforcement/deepwater-horizon-bp-gulf-mexico-oil-spill (last visited Mar. 23, 2021).  "The court may judicially notice a fact that is not subject to a reasonable debate because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b); *see EBSCO Gulf Coast Dev., Inc. v. Salas ex rel. Salas Children Trust Dated September 28, 2009*, No. 3:15-cv-586/MCR/EMT, 2018 WL 7288764, at *3 n.6 (N.D. Fla. Aug. 1, 2018) (taking judicial notice of the Deepwater Horizon – BP oil spill); *Kozinski v. Schmidt*, 436 F. Supp. 201, 205 (E.D. Wis. 1977) (taking judicial notice of effects of natural disasters).

stipulation.   And if the State won, the broad language of the stipulation would

translate into judgments for the State in the consolidated cases – at least, that appears

to have been the State's plan.  In short, the State intended to  resolve the competition

issue as to all rail carriers in the *CSX* case for a more expeditious disposition of the

*CSX* case  and  the  stayed  consolidated  cases.    The  State  stuck  to  its  strategy,

maintaining its broad stipulation, because history told the State that it would succeed

and would defeat the rail carriers' effort to avoid the discriminatory application of

Alabama's sales and use tax.   As the State explained in its opposition to the rail

carriers' motions for judgment on the pleadings:

> Just as in in *Norfolk I*, the Department/Commissioner did not litigate
> the issue of competition [in the *CSX* case] due to the then-existing state
> of 4-R Act jurisprudence that would have precluded CSXT from being
> entitled to relief. However, the change in legal framework created by
> the *CSXT* case has ripened the competition issue such that it now
> requires a factual determination and can no longer be treated as a
> stipulation—whether in this case or otherwise.

(Doc. 90, p. 21).

Having  repeatedly  asked  for  stays  of  the  consolidated  cases  because  the

resolution of the *CSX* case would be "dispositive of the issues" in the consolidated

cases, the State now argues:

> The *CSXT* case was not framed to seek a universal factual determination
> as to whether certain exemptions to Alabama's sales and use taxes
> contravene Section 306(1)(d) of the Railroad Revitalization and
> Regulatory Reform Act of 1976 (the "4-R Act"), 49 U.S.C. §
> 11501(b)(4), as to all railroads. The *CSXT* case sought declaratory and

injunctive relief only <u>on behalf of CSXT</u> and must be viewed in that context.

(Doc. 90, p. 7) (underlining in Doc. 90).  The State now says:  "The issue of competition necessarily is case specific."  (Doc. 90, p. 7).  But the State delayed discovery regarding competition in the consolidated cases for years in the hope that it could use its broad stipulation to avoid discovery altogether in the rail carriers' lawsuits.  Allowing the State to assert a contrary position now would undermine the Court's proceedings in the consolidate cases and unfairly prejudice the plaintiffs who could have been conducting discovery and litigating their cases over the past several years.

The State's attempts to reframe its stipulation are unavailing.  The State characterizes its stipulation as "a general perspective" based upon "a good faith conclusion that the claims asserted by the challenging railroads could be refuted on numerous legal grounds without having to litigate the specific factual issue of each railroad's competition with water carriers."  (Doc. 90, pp. 26–27).  And the State, as it does with respect to almost all of the *CSX* litigation, suggests that the *CSX* stipulation applies only to CSX and not all railroads in Alabama.  (Doc. 90, p. 28) ("Because the Department/Commissioner stipulated that water carriers generally could be considered principal competitors of rail carriers (namely, CSXT) in the prior litigation, they did not advocate or litigate a position that the court was persuaded to accept.").  But if that were the case, the *CSX* stipulation would say so.

A stipulation specific to CSX would state:  "The principal competitors to CSX in the transportation of property in interstate commerce in the State of Alabama are on-highway motor carriers of property in interstate commerce ('motor carriers') and carriers of property in interstate commerce by ships, barges and other vessels ('water carriers')."  But the State stipulated that rail carriers, including but not limited to CSX, compete with water carriers in Alabama, and that broad stipulation was no accident.

Neither was the language that the Eleventh Circuit selected in its final opinion in the *CSX* case.  The Court of Appeals understood the strategy behind the State's stipulation and framed its holding in language that would prevent the State from abandoning the stipulation on which the rail carriers, this Court, the Eleventh Circuit, and the Supreme Court had relied.  The Eleventh Circuit means what it says:

> As long as the State retains the sales and use tax exemption for diesel fuel used by water carriers "engaged in foreign or international commerce or in interstate commerce," Ala. Code §§ 40-23-4(a)(10), 40-23-62(3), the 4-R Act forbids it from imposing the sales and use tax on diesel fuel used by rail carriers "engaged in foreign or international commerce or in interstate commerce."

*CSX*, 888 F.3d at 1187.[11]  This binding precedent, *see* 11th Cir. R. 36, I.O.P. (2), leaves no room for argument.  The holding immediately preceding the "Conclusion"

---

[11] If the Eleventh Circuit intended its opinion to apply only to CSX, then the Court of Appeals could have written the relevant part of its conclusion as:  "the 4-R Act forbids [the State] from imposing the sales and use tax on diesel fuel used by CSX . . ."  But the Court of Appeals wrote: "the 4-R Act forbids [the State] from imposing the sales and use tax on diesel fuel used by rail carriers . . ."  *CSX*, 888 F.3d at 1187.

section of the Eleventh Circuit's opinion is the same.  The Eleventh Circuit held: "Having concluded that the water carrier exemption is not 'compelled by federal law' and that neither of the State's 'alternative rationales' justifies the water carrier exemption, *see CSX II*, 135 S. Ct. at 1144, we hold that Alabama's sales and use tax violates the 4-R Act."  *CSX*, 888 F.3d at 1187.  That holding concerns Alabama's sales and use tax which applies to all rail carriers.[12]

Relatedly, the remedial options that the Eleventh Circuit offered to the State, neither of which the State has selected to date, would impact all rail carriers, not just CSX.  The Eleventh Circuit stated:

> CSX is entitled to relief from the State's discrimination that violates the 4-R Act.  The relief the district court fashions should leave the State some discretion in remedying the tax discrimination.  For example, the State could repeal the water carrier exemption, in which case water carriers and rail carriers would both pay the sales and use tax when they buy or use diesel fuel for interstate hauls.  Or the State could retain the water carrier exemption and exempt rail carriers when they buy or use diesel fuel for interstate hauls.  Either way, the State would not be imposing a tax "that discriminates against a rail carrier." 49 U.S.C. § 11501(b)(4).

---

[12] The State contends that the conclusion added to the modified final opinion, to the extent that it purportedly applies to more rail carriers than CSX, goes beyond the facts of the *CSX* case and therefore constitutes non-binding dicta. (Doc. 90, p. 34).  Not so.  "Statements in an opinion that are not fitted to the facts, . . . or that extend further than the facts of that case, . . . or that are not necessary to the decision of an appeal given the facts and circumstances of the case . . . are dicta," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) (internal citations and quotation marks omitted), but the Eleventh Circuit's statement that the 4-R Act forbids the State from taxing "rail carriers" while exempting water carriers is necessary to the Eleventh Circuit's decision.  The Court of Appeals reversed this Court and remanded with instructions to enter judgment in CSX's favor because the 4-R Act forbids the State from taxing "rail carriers" while exempting water carriers.  Therefore, the Eleventh Circuit's conclusion is not dicta.

Case 2:11-cv-01047-MHH   Document 98   Filed 03/25/21   Page 40 of 44

*CSX*, 888 F.3d at 1187 (footnote omitted). Had the State followed the Eleventh Circuit Court of Appeals' holding in 2018 and selected one of the options that the Court of Appeals identified, these consolidated cases would be moot, and the rail carriers' lawsuits against the State would be concluded.[13]

"Alabama's tax scheme"—the sales and use tax on diesel fuel and the water carrier exemption—is the same now as it was at the time of the final *CSX* opinion, so the State still "imposes either a sales or use tax on rail carriers when they buy or consume diesel fuel but exempts competing . . . water carriers from those taxes," and therefore still "violates the Act." For the reasons discussed, and to protect the integrity of the judicial process, the Court judicially estops the State from disavowing its stipulation that rail carriers compete with water carriers in Alabama, and the Court will apply the Eleventh Circuit's holding in *CSX* to the consolidated

---

[13] The defendants make an "absurd results" argument. They contend that interpreting the Eleventh Circuit's holding in the *CSX* case to apply to all rail carriers in Alabama would extend an undue windfall to railroads in Alabama that have not offered proof that they compete with water carriers. (*See* Doc. 90, pp. 37–38). But that result is not a windfall because the rail carriers have foregone discovery for years based on the State's stipulation and representation that the answer in the *CSX* case would control the consolidated cases. And the result is not absurd. Because of the State's repeated stipulation that water carriers are the principal competitors of rail carriers in Alabama – a stipulation that the State maintained over ten years of litigation, the Eleventh Circuit recommended alternative remedies that would cure the discriminatory practice once and for all. *See CSX*, 888 F.3d at 1187. There is nothing absurd about accepting a party's stipulation and observing that the party's best interest would be served by fixing the problem rather than litigating it repeatedly over another decade or two, especially when the party is a governmental entity using taxpayer funds to fight a battle on multiple fronts. And the State could choose the remedy -- taxing water carriers -- that would enable the State to maintain the tax on diesel fuel sold to and used by rail carriers, thereby maintaining the income stream that the State clearly values: win-win.

cases and find on the basis of the pleadings that Alabama's sales and use tax violates the 4-R Act with respect to each of the plaintiff rail carriers.

> E.      The Issue Concerning Undyed Diesel as Opposed to Dyed Diesel

Finally, the county and municipal defendants contend that a factual dispute over whether railroads in Alabama may avoid the sales and use tax by using undyed diesel fuel instead of dyed diesel fuel precludes judgment on the pleadings.  (*See* Doc. 89, pp. 23–25).  According to those defendants, Alabama's sales and use tax does not apply to undyed or "clear" diesel, and, "[o]ther than the injection of dye, there is no difference between dyed diesel and clear diesel and locomotives operate perfectly well on clear diesel."  (Doc. 89, p. 24).  The defendants contend that the plaintiffs could therefore choose to use clear diesel and avoid alleged discrimination. (Doc. 89, p. 24).  The Court is not persuaded.

For starters, in another case concerning discriminatory taxation, the Supreme Court held that "a State cannot force a taxpayer to conduct its [] business" in a particular way "to avoid discriminatory taxation . . ." *Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev. & Fin.*, 505 U.S. 71, 78 (1992).  The Supreme Court stated:  "We find no authority for the [] proposition advanced here that a tax may be upheld if a taxpayer could avoid" the discriminatory impact of the tax. *Kraft Gen. Foods, Inc.*, 505 U.S. at 78.  To be sure, the rail carriers could avoid the discriminatory impact of Alabama's sales and use tax by leaving the state.  No one suggests the rail carriers

should exercise that option.  The defendants cannot compel the rail carriers to conduct business in Alabama in a particular way to excuse the State and local governments from their obligation to cure their discriminatory tax structure.

In addition, in the *CSX* case, this Court ruled in favor of the defendants on the clear fuel argument in finding that the State justified the motor carrier exemption. (*CSX* Case, Doc. 157, pp. 12–13).  The Court found that the evidence presented at trial showed that CSX's locomotives could operate just as well with clear diesel fuel, the State did not mandate that CSX use dyed diesel fuel, and, if CSX purchased the clear diesel fuel, then it would not be subject to the sales and use tax on dyed diesel fuel and would instead be subject to the same fuel-excise tax as motor carriers.  (Doc. 157, pp. 12-13).  The Court concluded that CSX could purchase clear diesel and avoid discrimination allegedly caused by the motor carrier exemption.  (Doc. 157, pp. 12-13).

On appeal, the Eleventh Circuit found that that ruling went beyond the scope of the Eleventh Circuit's mandate on remand which was limited to whether the fuel-excise tax was roughly equivalent to the sales and use tax.  *CSX*, 888 F.3d at 1174. Nevertheless, the Eleventh Circuit found that the Court's error was harmless because the Court alternatively found, and the Eleventh Circuit agreed, that the fuel-excise tax was roughly equivalent to the sales and use tax and therefore justified the motor carrier exemption.  *CSX*, 888 F.3d at 1174.

In addition, the Supreme Court likely rejected the clear fuel argument.  In its second opinion in the *CSX* case, the Supreme Court found:  "While the State argues that the existence of a fuel-excise tax justifies its decision to exempt motor carriers from the sales and use tax, it cannot offer a similar defense with respect to its exemption for water carriers. Water carriers pay neither tax."  *CSX II*, 575 U.S. at 31–32.  In his dissent, Justice Thomas adopted the clear fuel argument, but only in the context of the motor carrier exemption.  *CSX II*, 575 U.S. at 41 (Thomas, J., dissenting).  And the majority implicitly rejected the argument by not addressing it. *See Clemons v. Mississippi*, 494 U.S. 738, 747 n.3 (1990) ("We note also that although *Hicks* and a due process rationale were argued . . . by the dissenters in *Barclay v. Florida*, 463 U.S. 939, 985–986 . . . (1983), the Court implicitly rejected those arguments . . . by refusing to address them.").

Therefore, rail carriers' ability to use undyed diesel fuel does not change the conclusion that the sales and use tax violates the 4-R Act as long as the State retains the water carrier exemption.

## V.     Conclusion

For the foregoing reasons, the pleadings show no disputes of material fact, and the plaintiffs are entitled to judgment as a matter of law because the State of Alabama's sales and use tax on diesel fuel used by rail carriers in Alabama violates the 4-R Act so long as water carriers operating in the state are exempt from the tax. Accordingly, by separate order, the Court will grant the plaintiffs' motions for judgment on the pleadings with respect to all defendants except for the City of Irondale and its Treasurer, James Stewart, because the pleadings are not closed with respect to those two defendants.

**DONE** and **ORDERED** this March 24, 2021.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

44